**Misc. Docket No. 24-_____**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

IN RE SONY INTERACTIVE ENTERTAINMENT INC.

AND SONY GROUP CORPORATION

*Petitioners.*

On Petition for Writ of Mandamus to the
United States District Court for the
Eastern District of Texas
No. 2:22-cv-424-JRG, Hon. Rodney Gilstrap

## PETITION FOR WRIT OF MANDAMUS

ERIC A. BURESH
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
Telephone:  913.777.5600
Facsimile:   913.777.5601

*Counsel for Petitioners Sony Group
Corporation and Sony Interactive
Entertainment Inc.*

AUGUST 8, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** _____

**Short Case Caption** In re Sony Interactive Entertainment, Inc. et al.

**Filing Party/Entity** Sony Interactive Entertainment Inc. and Sony Group Corporation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/02/2024

Signature: /s/ Eric A. Buresh

Name: Eric A. Buresh

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Sony Group Corporation | | |
| Sony Interactive Entertainment Inc. | | Sony Group Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐      Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable                    ☐    Additional pages attached

| | | |
|---|---|---|
| Erise IP, P.A. (Eric A. Buresh, Abran Kean, Mark C. Lang, Nickolas Apel) | | |
| Gillam & Smith, L.L.P. (Melissa Smith and Travis Underwood) | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable                    ☐    Additional pages attached

| | | |
|---|---|---|
| None | | |
| | | |

# TABLE OF CONTENTS

**Page:**

CERTIFICATE OF INTEREST

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF RELATED CASE ....................................................v

JURISDICTIONAL STATEMENT .......................................................1

INTRODUCTION ................................................................................2

RELIEF SOUGHT................................................................................5

ISSUE PRESENTED............................................................................6

STATEMENT OF FACTS ....................................................................7

    I.     Resonant's Claims and the Accused PlayStation Products..................7

    II.    Defendants Seek Transfer to the NDCA ...............................7

    III.   The District Court Denies Sony's Motion to Transfer........................9

    IV.   The District Court Denies Sony's Motion for Reconsideration..........10

STANDARD OF REVIEW ..................................................................12

REASONS FOR ISSUING THE WRIT................................................15

    I.     The District Court's Clearly Erroneous Factual Finding....................16

    II.    Clear Errors of Analysis Involving the Private Interest Factors .........19

        a.     The District Court Erred in Finding the All Other Practical Problems Factor Weighs Against Transfer...............................19

      b.      The District Court Erred in Finding that the Cost of Attendance for Willing Witnesses Factor is Merely Neutral ...................................................................................... 21

III.    The Northern District of California is Clearly More Convenient ....... 23

CONCLUSION ......................................................................................... 25

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE AND FILING

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*, *et al.*,
No. W21-CV-00504-ADA-DTG,
2023 WL 2903978 (W.D. Tex. Apr. 11, 2023) .............................................17

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ...............................................................12, 13

*In re Apple Inc.*,
No. 24-129 ........................................................................................................21

*In re DISH Network*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021).......................20

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ....................................................................21

*In re Honeywell Int'l Inc.*,
No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) ..................*passim*

*In re NetScout Sys., Inc.*,
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021).................19, 20

*In re Princo Corp.*,
478 F.3d 1345 (Fed. Cir. 2007) ......................................................................1

*In re Radmax, Ltd.*,
720 F.3d 285 (5th Cir. 2013) .........................................................................13

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) ..................................................................19, 20

*In re Samsung Elecs. Co., Ltd.*,
2023 WL 8642711 (Fed. Cir. Dec. 14, 2023)......................................3, 21, 23

*In re TikTok Inc.*,
85 F.4th 352 (5th Cir. 2023) .................................................................*passim*

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .......................................................12, 13, 14, 22

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
    425 F.Supp.2d 325 (E.D.N.Y. 2006) ............................................................21

**Statutes:**

28 U.S.C. § 1295 .................................................................................................1

28 U.S.C. § 1404(a) .....................................................................................*passim*

28 U.S.C. § 1651(a) .............................................................................................1

## STATEMENT OF RELATED CASE

No appeal in or from the proceeding in the lower court has previously been before this Court or any other appellate court.

## JURISDICTIONAL STATEMENT

This petition seeks a writ of mandamus to a district court in a patent infringement action. This Court has jurisdiction under 28 U.S.C. §§ 1295 and 1651(a). *In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007).

# INTRODUCTION

This case belongs in the Northern District of California, which is the clearly more convenient forum to adjudicate the parties' dispute. Neither the plaintiff, Resonant Systems, Inc., nor the named Sony defendants, two non-U.S. entities, have any legitimate connection relevant to this case in the Eastern District of Texas. The record, even as found by the district court, demonstrates a strong connection between this case and the Northern District of California, including third parties with information relating to prior art, damages, and willfulness, the presence of willing party witnesses, and a named inventor. In contrast, the district court did not find a single witness or piece of evidence in the Eastern District of Texas. Despite these facts, the district court denied Defendants' motion to transfer to the Northern District of California under 28 U.S.C. § 1404(a), and the district court denied Defendants' motion for reconsideration of the court's order denying transfer.

These orders are a clear abuse of discretion because the district court first relied upon an erroneous factual finding and then, instead of rectifying its mistake, the district court replaced it with legal error in denying reconsideration. Initially, the district court miscalculated the timing of the transfer motion below, concluding that a nine-month delay heavily weighed against transfer. Then, in its order denying reconsideration, the district court recognized the error, and that the motion was filed

about three months after service of the Complaint. Even so, the district court still denied reconsideration.

Having stricken delay from its analysis, the existence of co-pending cases was the only consideration remaining that allegedly weighed against transfer and the district court's misapplication of the law was legal error. *See* Appx17-20. In analyzing the fourth private interest factor ("all other practical problems that make trial of a case easy, expeditious, and inexpensive"), the district court held that "simultaneous adjudication" of another case in the district involving two of the three patents at-issue here "will benefit judicial economy and avoid inconsistent determination." *See id.* But, that other case is stayed while the district court declined to stay the present action against Defendants such that there will not be "simultaneous adjudication" as a matter of fact. Any incremental gains that might be achieved if that stay is ever lifted are uncertain and insufficient to justify denying transfer. *See In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024) (granting petition for writ of mandamus and directing district court to grant transfer motion); *In re Samsung Elecs. Co., Ltd.*, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023) (same). Denying transfer and reconsideration here directly contradicts *Honeywell* and *Samsung* and is therefore a clear abuse of discretion.

Finally, the district court also misapplied Fifth Circuit precedent regarding the convenience of willing witnesses, finding that factor neutral even though the Northern District of California is clearly more convenient than the Eastern District of Texas for witnesses from China[1] or Japan. *See In re TikTok Inc.*, 85 F.4th 352, 361-62 (5th Cir. 2023) (granting petition for writ of mandamus and directing district court to grant transfer motion).

In summary, this case lacks any legitimate mooring to the Eastern District of Texas, and the district court's decision to deny transfer was a clear abuse of discretion because it was based on a foundational factual error that was not remedied, resulting in a legal error that conflicts with this Court's precedent. The Court should grant mandamus and direct transfer to the Northern District of California.

---

[1] There are no witnesses expected from China in this case.

## RELIEF SOUGHT

Petitioners respectfully request that this Court grant this petition for a writ of mandamus, vacate the district court's decision, and remand the case with instructions to transfer this action to the United States District Court for the Northern District of California.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in refusing to transfer this case to the United States District Court for the Northern District of California.

## STATEMENT OF FACTS

### I.    Resonant's Claims and the Accused PlayStation Products

Resonant Systems, Inc. is a corporation organized under Washington law with its principal place of business in Seattle, Washington. Appx30 (Complaint). Robin Elenga, President and founder of Resonant and a joint inventor of all three of the asserted patents, resides in Seattle, Washington. *See* Appx38, Appx107, Appx174, Appx296-301 (Asserted Patents and LinkedIn Profile). Resonant asserts three patents against the Sony Defendants: U.S. Patent Nos. 8,860,337, 9,369,081, and 9,941,830. Appx31-35 (Complaint). These asserted patents are directed toward linear vibration modules that provide vibrational forces to a device. *See id.* The accused PlayStation products include video game controllers used in combination with the PlayStation 5 console. *See id.* The Sony employees knowledgeable about the design, development, importation, testing, using, marketing, distribution, and sale of these products are in Japan or in the Northern District of California. Appx264-266 (Waugh Decl.).

### II.    Defendants Seek Transfer to the NDCA

Defendants Sony Group Corporation ("SGC") and Sony Interactive Entertainment Inc. ("SIE Inc.") (collectively, "Defendants") are both Japanese corporations. Appx264-266 (Waugh Decl.). Sony Interactive Entertainment LLC ("SIE LLC"), a subsidiary of SGC and sister company to SIE Inc., is headquartered

7

in San Mateo, California and is the exclusive seller and distributor of the accused products in the United States but is not a named defendant in this case. *Id.*

In view of the strong connections between the Northern District of California and Resonant's allegations of infringement by the accused PlayStation products, Defendants moved to transfer under 28 U.S.C. § 1404(a). Appx243-284 (Motion). Defendants supported the transfer motion with documentation and sworn declarations from Takeshi Igarashi, Vice President of Peripheral Design at Sony Interactive Entertainment Inc. and from Lori Waugh, the Vice President of Human Resources at Sony Interactive Entertainment LLC. Appx264-266 (Waugh Decl.); Appx285-291 (Igarashi Decl.). The declarations from Mr. Igarashi and Ms. Waugh establish that the sources of proof for the accused PlayStation products are in Japan or Northern California. *Id.* Additionally, Defendants identified 11 specific document custodians and likely party trial witnesses. Appx252-253 (Motion); *see also* Appx264-266 (Waugh Decl.); Appx285-291 (Igarashi Decl.). Of these witnesses, nine work at offices in the Northern District of California. *Id.* The other two work at offices in Tokyo, but have also worked in California on the design, development and/or testing of the accused PlayStation products. *Id.* Defendants also identified 18 non-party witnesses in California, including former employees of Sony Interactive Entertainment LLC involved in product development of the accused PlayStation products, and one of the named inventors of the asserted patents. Appx256 (Motion)

(also identifying a licensor/inventor of relevant technology and several prior art inventors).

In its response to Defendants' motion, Resonant failed to identify any connection with the Eastern District of Texas. Appx567-587 (Opposition Brief). Resonant failed to identify any sources of proof or witnesses in the Eastern District of Texas. *See id.* Instead, the sole allegation relating to venue is that Defendants are foreign entities and, thus, subject to a lawsuit in that district. *See id.*

## III. The District Court Denies Sony's Motion to Transfer

In denying Defendants' motion, the district court gave substantial weight to what it perceived as a nine-month delay in bringing Defendants' motion. Appx5 (Order Denying Transfer). Specifically, the district court found that "Defendants waited roughly nine months after receiving service to file their motion to transfer." *Id.* This factual finding is incorrect, as discussed *infra.* Resonant did not argue in the original briefing that delay was something that the district court should even consider in its analysis. Appx567-587 (Opposition Brief). Rather, the district court introduced this factual error of its own accord, and the incorrect factual finding infected the district court's entire analysis. The district court intertwined its factual error with the required transfer factor weighing exercise. For example, the district court stated that it "**weighs Defendants' delay in filing the motion along with** the private and public interest factors … in determining whether the NDCA is a clearly more convenient

forum." Appx5 (emphasis added). The district court further stated that "having weighed [the public and private interest] factors **within the context of Defendants' unexcused and material delay** in filing the Motion, the Court concludes that the NDCA is not a 'clearly more convenient' forum for this dispute." Appx16 (emphasis added). The district court also emphasized that "Defendants' delay has necessarily lessened any convenience that a transfer to NDCA could provide." Appx5. Within its analysis of the transfer factors themselves, the district court found only one factor that weighed against transfer—the fourth private interest factor that looks to all other practical problems. For that factor, the district court held that "Defendants' **substantial delay in moving to transfer** is a fact that weighs against transfer." Appx12 (emphasis added). The district court's incorrect factual finding regarding delay infected every aspect of its analysis in denying transfer.

## IV.   The District Court Denies Sony's Motion for Reconsideration

Defendants filed a motion for reconsideration, noting the error in the district court's reliance on the purported "material and unexplained" nine-month delay. In an order denying Defendants' reconsideration motion, the district court re-evaluated its analysis of the fourth private interest factor in view of this error and found that "even after discounting Defendant's delay from the analysis under this factor, this Court still finds that the factor, on balance, weighs against transfer" because "the simultaneous adjudication of this case and the co-pending Samsung case, which

involves two of the same asserted patents, will benefit judicial economy and avoid inconsistent determinations." Appx18-19.[2] While this finding is in itself clearly erroneous because the Samsung case is presently stayed pending a Final Written Decision by the PTAB, as further explained *infra,* the district court's Order on reconsideration failed to address the overarching legal error that its weighing of the transfer factors as a whole was influenced by its original factual error. *See* Appx17-20. Rather than articulate any careful re-weighing in view of its prior comments about delay, the Order on reconsideration emphasized that "[t]he remainder of the Court's analysis remains unchanged." Appx19.  The district court's analysis should not in fact remain unchanged where the district court previously expressed that its factual mistake had been given weight throughout its analysis and not merely in the context of a single private interest factor. Appx5-16.

---

[2] The order denying reconsideration was entered on July 9, 2024. Appx20.

## STANDARD OF REVIEW

This Court applies the law of the regional circuit—in this case, the Fifth Circuit—in mandamus review of the district court's denial of a motion to transfer. *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020). A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate method of attaining the desired relief;" and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). "In the § 1404(a) transfer context, however, the test for mandamus essentially reduces to the first factor."[3] *Apple*, 979 F.3d at 1336-37 (applying Fifth Circuit law); *see also TikTok*, 85 F.4th at 357-58. Accordingly, Sony need only show that the district court "clearly abused its discretion" in denying the transfer motion. *Volkswagen*, 545 F.3d at 311. A clear abuse of discretion exists when the district court reaches a "patently erroneous result" by: "(1) rel[ying] on clearly erroneous factual findings; (2) rel[ying] on erroneous conclusions of law; or (3) misappl[ying] the law to the facts." *Apple*, 979 F.3d at 1336 (citing *Volkswagen*, 545 F.3d at 310); *see also Honeywell*, 2024 WL 302397 at *2 (mandamus relief appropriate "when a district court's denial of a

---

[3] This is because "the possibility of an appeal in the transferee forum following a final judgment is not an adequate alternative, and . . . an erroneous transfer may result in judicially sanctioned irreparable procedural injury." *Apple*, 979 F.3d at 1337 (citations and internal quotations omitted).

motion to transfer clearly contravenes governing legal standards leading to a patently erroneous result.").

The Fifth Circuit uses both "private interest" factors and "public interest factors" in a transfer analysis. *Apple*, 979 F.3d at 1338 (citing *Volkswagen*, 545 F.3d at 315). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* "Under Fifth Circuit law, transfer 'should be granted if the movant demonstrates that the transferee venue is clearly more convenient.'" *Honeywell*, 2024 WL 302397 at *2 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)). The Fifth Circuit has "found an abuse of discretion even where a majority of factors are neutral." *TikTok*, 85 F.4th at 358 (citing *Radmax*, 720 F.3d at 290) (granting mandamus where five factors were neutral and three weighed in favor of transfer)). "That is because *Volkswagen* recognized that a district court abuses its discretion by denying transfer when 'not a single relevant factor favors the

[plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen*, 545 F.3d at 318) (modification in original).

## REASONS FOR ISSUING THE WRIT

The district court clearly abused its discretion in denying transfer because the clearly erroneous factual finding regarding delay broadly compromised the analysis, especially as to the fourth private interest factor, and resulted in legal error by misapplying the law to the facts of this case. Of the eight private and public interest factors in Fifth Circuit law, the district court found that three weigh in favor of transfer while only one weighs against. Appx1-16.

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Slightly favors transfer |
| Cost of attendance of willing witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

Correcting for the factual error and correctly applying Fifth Circuit law to the facts of this case, the result is that not a single factor weighs against transfer as the fourth private interest factor should shift to neutral. Furthermore, the cost of attendance for willing witnesses factor should shift from neutral in the district court's analysis to weighing in favor of transfer. A proper weighing of the transfer factors overwhelmingly shows that the Northern District of California is clearly more

convenient, and that the district court's denial of transfer was an abuse of discretion that led to an erroneous result.

## I.   The District Court's Clearly Erroneous Factual Finding

In its original order denying transfer, the district court originally found that "Defendants waited roughly nine months *after receiving service* to file their motion to transfer." Appx5 (emphasis added). The district court infused this purported delay into both its analysis of and weighing of the private and public interest factors in determining that transfer was not warranted. Appx5, Appx12, Appx16. But, this factual finding was plainly in error. Although the Complaint in this case was filed on October 28, 2022, Plaintiff did not complete service on Defendants until April 28, 2023. *See* Appx1590-1596 (Sur-Reply Brief) (Plaintiff acknowledging Defendants were "technically served with the complaint in April 2023"); Appx239-240 (Defendants' Applications of Extension of Time reflecting that Defendants were served on April 28, 2023). Other early case deadlines, including infringement contentions that set out the scope of the case, were scheduled based on the April 2023 service date. *See* Appx241-242 (Order setting the scheduling conference required Plaintiff's infringement contentions on July 6, 2023, and set an initial scheduling conference for July 20, 2023). In just over two weeks from the July 20 scheduling conference, about a month after receiving infringement contentions, and a little over three months after service of the complaint, Defendants filed their

transfer motion on August 8, 2023. Appx243-284 (Motion). The time between service of the complaint and filing of the transfer motion was actually roughly three months, which is neither a material nor inexcusable delay. *See In re TikTok, Inc.*, 85 F.4th 352, 364 fn.13 (5th Cir. 2023) (noting that "Petitioners [TikTok defendants] filed their § 1404(a) motion ***timely***"); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, *et al.*, No. W21-CV-00504-ADA-DTG, 2023 WL 2903978, at *1 (W.D. Tex. Apr. 11, 2023) (describing that original complaint was filed in May 2021, amended complaint was filed on August 12, 2021, and the TikTok defendants filed their motion to transfer eight months later on May 23, 2022). Indeed, three months from service is a very typical duration in the district court for filing a motion to transfer. *See* Appx1624-1627 (Reply Brief in support of Motion for Reconsideration) (citing cases with similar delay in which transfer was granted).

As noted above, the district court's erroneous view of the alleged delay percolated throughout the district court's analysis. In its order denying the transfer motion, the district court emphasized that it "**weighs Defendants' delay in filing the motion along with the private and public interest factors** … in determining whether the NDCA is a clearly more convenient forum." Appx5 (emphasis added). The district court further expressly noted that "having weighed [the public and private interest] factors **within the context of Defendants' unexcused and**

**material delay** in filing the Motion, the Court concludes that the NDCA is not a 'clearly more convenient' forum for this dispute." Appx16 (emphasis added).

The district court then recognized its error but failed to cure it. Despite expressly relying on the miscalculated delay as the contextual underpinning for its weighing of factors in its decision denying transfer, the district court, on reconsideration, only commented on the fourth private interest factor, while expressing that the remainder of its analysis remained unchanged. Appx17-20 (Order Denying Motion for Reconsideration).

Instead, in denying Defendants' request for reconsideration, the district court erroneously suggested that there *may have been* "pre-service communications between plaintiff's counsel and defendant's domestic subsidiaries." Appx19. There is no evidence in the record to support the district court's assumptions in this regard. And the district court offers no rationale explaining why—or precedent suggesting that—a defendant should be held to account for the often-lengthy timeframe between a complaint and service of a lawsuit when all of the named defendants are non-U.S. entities. *See* Appx17-20. Indeed, Resonant did not even argue in the original briefing on the motion to transfer that any delay would weigh against transfer. *See* Appx567-587 (Opposition Brief); Appx1573-1582 (Sur-Reply Brief).

It was an abuse of discretion to weigh the transfer factors through the lens a "unexcused and material delay" by Defendants that simply did not exist. When the

transfer factors are weighed without the error, transfer is clearly warranted and the district court's denial thereof merits mandamus relief.

## II.   Clear Errors of Analysis Involving the Private Interest Factors

### a.   *The District Court Erred in Finding the All Other Practical Problems Factor Weighs Against Transfer.*

The district court's conclusion that this factor weighs against transfer is legal error. In both its order denying transfer and its order denying reconsideration, the district court gave weight to "simultaneous adjudication" of this case and another case that involves two of the three patents asserted here. Appx12 (Order Denying Transfer); Appx19 (Order Denying Reconsideration). But, once delay is eliminated from the analysis, the existence of a co-pending case cannot prevent transfer when the convenience of the parties and witnesses supports transfer. *See Honeywell*, 2024 WL 302397 at *3 (noting that "the 'incremental gains' in judicial economy that might result from 'keeping these cases in the Western District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and the witnesses") (quoting *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021)); *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) ("[W]e have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor."). In *Honeywell*, there were two other related infringement suits in the Western District of Texas, and the Court still found any

19

purported judicial economy to be insufficient to deny transfer. *See id.* The circumstances here are even less likely to achieve any purported judicial economy because there is only one related case, i.e., *Samsung,* involving only two of the three patents asserted against Petitioners and it involves a different defendant with "different hardware and different software" and is "likely to involve significantly different discovery, evidence, and issues." *Honeywell*, 2024 WL 302397 at *3; *see also In re DISH Network*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021). Accordingly, the mere presence of a single case in the same district cannot outweigh the district court's finding that three factors favor transfer and no factor weighs against transfer.  Under these facts, it was an abuse of discretion to deny Defendant's motion to transfer.  *See In re NetScout*, 2021 WL 4771756, at *5.

Furthermore, there is no "simultaneous adjudication" here because the co-pending Samsung case is stayed pending the outcome of IPRs while the district court denied a stay in the instant case. Appx2 (Order Denying Transfer); Appx1670-1675 (Order Denying Motion to Stay). This means that the instant case will proceed to trial in December 2024 while the stayed Samsung case remains stayed until a final written decision is issued in January 2025. Appx1664-1669 (Dkt. 82 (DCO)), Appx1626 (Dkt. 68 (Defs Reply re Mtn Reconsider) at p.3). The stayed status of the Samsung case further diminishes any purported judicial economy served by denying transfer and highlights the legal error in the district court's conclusion. *See*

*Honeywell*, 2024 WL 302397 at *3; *see also In re Samsung Elecs. Co., Ltd.*, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023) (noting, where one stayed case remained in WDTX along with the at-issue case, that "[t]his record simply provides no basis to conclude that judicial economy considerations weigh in favor of keeping this case in WDTX."). Correcting for this error, this factor should be weighed as neutral in the transfer analysis.[4]  This correction, coupled with the district court's finding that three factors favor transfer and none weigh against transfer, are sufficient to warrant granting mandamus.

      *b.*     *The District Court Erred in Finding that the Cost of Attendance for Willing Witnesses Factor is Merely Neutral.*

The district court also clearly erred in considering the cost of attendance of willing witnesses, which amplifies the clear abuse of discretion in denying transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("The convenience of the witnesses is probably the single most important factor in a transfer analysis.") (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006)). Specifically, the district court found that "the witnesses most germane to the technical issues of infringement and validity will travel from China or Japan" and "accord[ed] less weight" to "witnesses working in the NDCA."

---

[4] Petitioners note Apple has also filed a Petition for Writ of Mandamus in this Court seeking transfer to the NDCA. *In re Apple Inc.*, No. 24-129.  The case against Apple involves many of the same patents asserted against Petitioners.  Apple's Petition is fully briefed and, if granted, would further support finding this factor neutral.

Appx9-11. Even accepting the district court's findings about the location of willing witnesses, its conclusion that this factor should be neutral contradicts Fifth Circuit law. Appx9-11; *see also TikTok*, 85 F.4th at 361-62.

In *TikTok*, there was one relevant technical witness in Texas, but the bulk of relevant witnesses were in China. *See id.* There, the district court concluded that the cost of attendance of willing witnesses factor should still be neutral. The Fifth Circuit rejected the district court's finding in *TikTok*, and instead found that "the Northern District of California is a clearly more convenient venue for most relevant witnesses in this case." *Id.* at 362. The Fifth Circuit also found that "[t]he district court committed a clear abuse of discretion in concluding otherwise." *Id.* (finding that the district court ignored the Fifth Circuit's 100-mile test); *see also Volkswagen*, 545 F.3d at 315 (discussing the 100-mile test, and noting that, under the test, "the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled.")

The facts here are considerably more one-sided than in *TikTok*, because here the district court did not find any relevant willing witness located in Texas. Appx9-11. As in *TikTok* where the "bulk of relevant witnesses" were in China, in this case many of the relevant witnesses are coming from Japan. *See TikTok*, 85 F.4th at 361-62; Appx9-11. As in *TikTok*, the district court failed to discuss the application of 100-mile test in the Fifth Circuit law other than to note that it should not be rigidly

applied. *See id.*; *see also* Appx9-11. As in *TikTok*, "the Northern District of California is a clearly more convenient venue for most relevant witnesses" that either reside in Japan or the Northern District of California. *TikTok*, 85 F.4th at 362.

The district court's finding that this factor should be treated as neutral is a clear abuse of discretion as in *TikTok*. *See id.; see also In re Samsung,* No. 2023-146, 2023 WL 8642711, at *2 (noting Fifth Circuit's holding in *TikTok* and finding it an abuse of discretion to not weigh this factor in favor of transfer where most potential witnesses are in Korea and NDCA and no witnesses were in transferor district). Under Fifth Circuit law, accepting the district court's findings that the willing witnesses will come from Japan or NDCA and that there are no willing witnesses in Texas, this factor should favor transfer.[5]

## III.    The Northern District of California is Clearly More Convenient

Applying the correct Fifth Circuit law to the correct facts, the Northern District of California is a clearly more convenient forum for this case. In *TikTok*, factors one and three favored transfer, and all other factors were neutral. *See TikTok*, 85 F.4th at 366. Even so, the Fifth Circuit granted the writ of mandamus and ordered the district court to transfer to the Northern District of California. Here, correcting

---

[5] The writ should be granted even if the district court's analysis of this factor remains unchanged.

for the district court's erroneous factual finding and misapplication of the law to the facts, the factors in this case are even more heavily one-sided:

| Factor | The Correct Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Slightly favors transfer |
| Cost of attendance of willing witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

The Fifth Circuit in *TikTok* emphasized that one of its motivations for addressing its transfer standard in that case was to "improve 'consistency of outcomes' by further instructing when transfer is—or, for that matter, is not—warranted in response to a § 1404(a) motion." *Id.* at 367 (noting that, since *Volkswagen*, district courts in the Fifth Circuit have been called upon to apply that law in over 2,000 cases). Here, for consistency with Fifth Circuit law, this Court should grant the petition for writ of mandamus because the evidence overwhelmingly shows that the Northern District of California is clearly more convenient, and that the district court's denial of transfer is a patently erroneous result. *See Honeywell*, 2024 WL 302397, at *3 (granting petition for writ of mandamus and ordering transfer because "as in *TikTok* and other recent cases in

which this court and the Fifth Circuit have granted mandamus, several important transfer factors favor transfer, while nothing of significance ties this case to the [original forum].").

## CONCLUSION

Defendants respectfully request that this Court grant this petition for a writ of mandamus, vacate the district court's decision, and remand the case to the district court with instructions to transfer this action to the Northern District of California.

August 8, 2024                    /s/ *Eric A. Buresh*
                                  Eric A. Buresh
                                  ERISE IP, P.A.
                                  7015 College Boulevard, Suite 700
                                  Overland Park, Kansas 66211
                                  (913) 777-5600
                                  eric.buresh@eriseip.com

                                  *Counsel for Petitioners Sony Group*
                                  *Corporation and Sony Interactive*
                                  *Entertainment Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RESONANT    SYSTEMS,    INC.,    d/b/a RevelHMI, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO.  2:22-CV-00424-JRG |
| SONY GROUP CORPORATION and SONY INTERACTIVE ENTERTAINMENT INC., | § § § | |
| *Defendants.* | § § § | |

**<u>ORDER</u>**

## I.    INTRODUCTION

Before the Court is Defendants Sony Group Corporation ("SGC") and Sony Interactive Entertainment Inc.'s ("SIEI") (collectively, "Defendants") Motion to Transfer Venue to the Northern District of California (the "Motion").  (Dkt. No. 21.)  The Motion seeks transfer on convenience grounds pursuant to 28 U.S.C. § 1404(a).  Having considered the Motion and the related briefing, the Court finds that it should be and hereby is **DENIED**.

## II.    BACKGROUND

On October 26, 2022, Resonant Systems, Inc. d/b/a RevelHMI ("RevelHMI" or "Plaintiff") filed a Complaint against Defendants SGC and SIE, accusing Defendants of directly and indirectly infringing U.S. Patent Nos. 8,860,337; 9,369,081; and 9,941,830 (collectively, the "Asserted Patents").  (Dkt. No. 1.)

On the same day, Plaintiff filed Case No. 2:22-cv-00423-JRG (the "*Samsung* case") in this district alleging that Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

("Samsung") infringes three patents, two of which are the same Asserted Patents in this case.   *See Resonant Sys. d/b/a RevelHMI v. Samsung Elec.*, No. 2:22-cv-00423-JRG, Dkt. No. 1 (E.D. Tex. Oct. 26, 2022). The *Samsung* case is now stayed.  (*Id.* at Dkt. No. 83.)  The impact of the *Samsung* case within the analysis of this Motion will be addressed *infra* § IV.C.4.

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a).  The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)).  If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).  The private interest factors include: (1) "the relative ease of access to sources of proof," (2) "the availability of compulsory process to secure the attendance of witnesses," (3) "the cost of attendance for willing witnesses," and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive."  (*Id.*)  The public interest factors include: (1) "the administrative difficulties flowing from court congestion," (2) "the local interest in having localized interests decided at home," (3) "the familiarity of the forum with the law that will govern the case," and (4) "the avoidance of unnecessary problems of conflict of laws or the application of foreign law."  (*Id.*)  The Fifth Circuit has instructed that courts can also

consider a party's delay in deciding a motion to transfer "because parties seeking a change in venue should act with reasonable promptness." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (*Planned Parenthood*) (internal quotations omitted).

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. (*Id.*) Absent such a showing, however, the plaintiff's choice is to be respected. (*Id.*) "When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181-JRG, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (collecting cases).

## IV.    DISCUSSION

### A.    Whether This Case Could Have Been Brought in the NDCA

The threshold inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. The parties appear to agree that Defendants SIEI and SGC are "foreign companies for which venue is proper in any judicial district." (Dkt. No. 21 at 4.) Defendants argue that Sony Interactive Entertainment LLC ("SIE"), a non-party U.S. subsidiary of SGC, is headquartered in the NDCA and "imports, sells, and distributes the Accused Products throughout the United States, including in the [NDCA]." (*Id.*) Defendants further note that SIEI employees who were involved with the development of the Accused Products work in the NDCA, and other SIEI employees residing in

3

**Appx3**

Japan visited NDCA in connection with the development, design, and testing of the Accused Products.  (*Id.* at 5.)

In response, Plaintiff argues that Defendants did not meet their burden of establishing personal jurisdiction over SIEI and SGC.  (Dkt. No. 40 at 3-5.)  Specifically, Plaintiff argues that allegations regarding non-party SIE being in the NDCA cannot establish personal jurisdiction over Defendants SGC and SIEI.  (*Id.* at 3.)  In support, Plaintiff notes that Defendants' Answer expressly denied personal jurisdiction in the EDTX.  (*Id.* at 3-4.)  Finally, Plaintiff argues that the 40 SIEI employees working and residing in the NDCA do not subject SIEI or SGC to general personal jurisdiction or specific personal jurisdiction in the NDCA.  (*Id.* at 4.)

Defendants respond that SGC's two wholly owned subsidiaries, SIEI in Japan and SIE in NDCA, work together to operate the PlayStation business.  (Dkt. No. 42 at 1.)  Defendant argues that SIEI and SIE employees work together to develop the Accused Products, including testing in the NDCA.  (*Id.*)  Defendant further notes that SIE in NDCA purchases the Accused Products from SIEI and imports them into the United States, where they are sold nationwide.  (*Id.*)  Therefore, according to Defendants, there is "specific activity in the NDCA from which the cause of action arises."  (*Id.*)

The Court agrees with Defendants that this case could have been brought in the NDCA. The parties do not appear to dispute that the NDCA is a proper venue.  As to personal jurisdiction, SGC's two wholly owned subsidiaries, SIE in NDCA and SIEI in Japan, work together to develop the Accused Products and sell them in the NDCA.  Indeed, SIE purchases the Accused Products from SIEI and sells them in the NDCA.  That activity gives rise to the cause of action in this lawsuit.  Accordingly, the Court finds that this threshold question is satisfied and turns next to the question of convenience.

**B. Timeliness of the Motion**

The Fifth Circuit has emphasized that a party should not delay the filing of a motion to transfer.  *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989); *see also In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010) (recognizing and applying *Peteet* in denying petition for mandamus where the district court determined that the movant had failed to file its motion to transfer with reasonable promptness).  As this Court has previously explained, "[t]he longer a litigant waits to file a transfer motion, the more resources the parties and the Court will expend by the time the motion is ripe for consideration," meaning that "the later a motion is filed, the less convenient a transfer would be."  *Monarch Networking Sols. LLC v. Cisco Sys.*, No. 2:20-cv-00015-JRG, 2021 U.S. Dist. LEXIS 1551, at *32 (E.D. Tex. Jan. 5, 2021).

In this case, Defendants waited roughly nine months after receiving service to file their motion to transfer.  For the specific reasons discussed below (*see infra* § IV.C.4), Defendants' delay has necessarily lessened any convenience that a transfer to the NDCA could provide.  *Monarch Networking*, 2021 U.S. Dist. LEXIS 1551, at *32.  The Court weighs Defendants' delay in filing the Motion along with the private and public interest factors discussed below in determining whether the NDCA is a clearly more convenient forum. *See Planned Parenthood*, 52 F.4th at 631 ("The district court was within its discretion to conclude that [movant]'s failure to seek relief until late in the litigation weighed against transfer.").[1]

**C. Private Interest Factors**

   **1.  *The Relative Ease of Access to Sources of Proof***

Defendants argue that this factor weighs heavily in favor of transfer because "[a]ll hard copies and electronic documents in Defendants' possession or control that are likely to serve as

---

[1] The Fifth Circuit's existing guidance on convenience transfers has repeatedly emphasized that the specific factors laid out are not exclusive. This leaves the door open for the Court to consider the strategic delays undertaken by Defendants.

sources of proof and relate to Plaintiff's claims are stored at or accessible in the ordinary course of business at SIE's headquarters in San Mateo, California." (Dkt. No. 21 at 6.) Defendants contend that the personnel who created and maintain this documentation are in the NDCA and Japan, not the EDTX. (*Id.* at 6-7.) Defendants further argue that no source of proof relating to the Accused Products is in the EDTX. (*Id.* at 7.)

In response, Plaintiff argues that the accused infringers are SIEI and SGC (not SIE in NDCA), so most of the relevant evidence is in Japan. (Dkt. No. 40 at 6.) According to Plaintiffs, "[e]lectronic evidence from Asia can be easily accessed anywhere, and it would be equally inconvenient to ship physical evidence internationally." (*Id.*) Plaintiff further argues that non-party SIE does not have any evidence regarding the "design, development, and manufacture of the accused products—that evidence is exclusively in Defendants' possession in Japan." (*Id.* at 8.) Plaintiff argues that the only non-duplicative evidence SIE may have relates to "irrelevant product development testing evidence." (*Id.*) Plaintiff also contends that the document custodians identified by Defendants should not be improperly double counted under this factor. (*Id.* at 7.) Finally, Plaintiff contends that Microchip, MediaTek, AMD, and ARM are relevant to the claimed features and may have evidence in Texas. (*Id.* at 6.)

In reply, Defendants reiterate that SIE in the NDCA has relevant documents and document custodians. (Dkt. No. 42 at 2.) Defendants further point out that Plaintiff fails to identify any evidence that Microchip, MediaTek, AMD, and ARM have in Texas, and that it is just as likely that those companies have relevant information at their NDCA offices. (*Id.* at 2.)

The Court concludes that this factor weighs only slightly in favor of transfer. The Court first notes that this factor "relates to the ease of access to non-witness evidence, such as documents and other physical evidence," not the availability of witnesses. *In re Apple Inc.*, 979 F.3d 1332,

6

1339 (Fed. Cir. 2020) (holding that it was legal error to "consider[] witnesses as 'sources of proof' for purposes of the first private interest factor"); *see also Seasons USA, Inc. v. FUN World, Inc.*, No. 2:22-cv-00416-JRG-RSP, 2023 WL 5511521, at *2 (E.D. Tex. Aug. 25, 2023) (acknowledging that "the proper place for weighing witnesses is in the subsequent factors" not in the "ease of access to sources of proof" factor). Accordingly, the Court disregards Defendants' references to potential witnesses with respect to this factor.

Setting aside these arguments, as the Court must, Defendants' main argument is that third-party SIE is headquartered in the NDCA and holds documents relevant to this case. However, Defendants do not identify any examples of physical documents or evidence that is stored in physical form in the NDCA. Nor do they meaningfully dispute Plaintiff's contention that most of the relevant documentary evidence is in Japan. Assuming that the documents in Japan are stored and produced electronically, the Court sees no indication that evidence in Japan will be any easier to access if this case was transferred to the NDCA. *See Planned Parenthood*, 52 F.4th at 630 (recognizing that electronic evidence is equally accessible in different forums and holding that "[t]he location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature") (citing *Volkswagen II*, 545 F.3d at 316–17). Nonetheless, the Court recognizes that Plaintiff has failed to identify any physical sources of proof present in the EDTX. Accordingly, the Court finds that this factor weighs slightly in favor of transfer.

### 2.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Defendants argue that this factor "strongly favors transfer" because there are "numerous non-party witnesses that have relevant knowledge, and all reside in California." (Dkt. No. 21 at 9.) Specifically, Defendants identify Mr. Brian Pepin, one of the named inventors who resides in the NDCA. (*Id.*) Defendants next identify Mr. John Houston, an inventor of an application that

was cited on the face of the Asserted Patents and who later licensed that application to SIE.  (*Id.*)
Defendants also identify Ms. Julie Romanosky, a former User Researcher at SIE who was involved
in SIE's product development launch testing in the U.S.  (*Id.* at 9-10.)  Defendants further identify
a list of 13 prior art witnesses who live in California.  (*Id.* at 10.)  Defendants argue that each of
these non-party witnesses is located within the subpoena power of the NDCA and not the EDTX.
(*Id.* at 10-11.)

      In response, Plaintiff argues that Microchip, MediaTek, ARM, and AMD are third parties
with relevant evidence related to the "design and manufacture of components used in the Accused
Products."  (Dkt. No. 40 at 9.)  Plaintiff further argues that the "vast majority" of relevant third
parties in this case are in Japan, China, Taiwan, and Texas, and therefore outside the subpoena
power of the NDCA.  (*Id.*)  Plaintiff notes that Mr. Brian Pepin will not require compulsory process
and, in any case, does not have "unique, material knowledge" that co-inventor Mr. Elenga does
not have.  (*Id.*)  Plaintiff also argues that neither Mr. John Houston nor Ms. Julie Romanosky is
relevant—Mr. Houston's application is not identified in Defendants' invalidity contentions, and
Ms. Romanosky was involved only in irrelevant "user experience" tests.  (*Id.* at 10-11.)  Finally,
Plaintiff observes that 10 of the 13 identified prior art witnesses are inventors not listed in
Defendants' invalidity contentions.  (*Id.* at 11.)  Plaintiff further argues that the relevance of prior
art testimony is "speculative at best."  (*Id.* (citing *Monarch Networking*, 2021 U.S. Dist. LEXIS
1551, at *15).)

      Defendants respond that Mr. Houston's application and the prior art references Defendants
identified were incorporated in its invalidity contentions.  (Dkt. No. 42 at 3.)  In addition,
Defendants argue for the first time in reply that two former Sony employees—Ms. Huang and Mr.
Matsukawa—identified by Plaintiff as allegedly knowledgeable about "Defendants' willful,

**Appx8**

deliberate, and unreasonable infringement" are subject to compulsory process in NDCA but not the EDTX.  (*Id.* at 3-4.)

Plaintiff responds that the vast majority of Defendants' prior art witnesses are inventors of patents or applications that were not charted in Defendants' invalidity contentions.  (Dkt. No. 45 at 3.)  In addition, Plaintiff contends that it will have Ms. Huang and Mr. Matsukawa appear by deposition, making a subpoena unnecessary.  (*Id.* at 4.)

The Court finds that this factor weighs slightly in favor of transfer.  The Fifth Circuit has instructed that "the availability of compulsory process [factor] receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation omitted).  Here, Defendants have neither shown nor alleged that any non-party witnesses would be unwilling to testify in this case.  Furthermore, the Court recognizes that "the relevance of a particular prior art witness's live testimony at trial is speculative at best." *Monarch Networking*, 2021 U.S. Dist. LEXIS 1551, at *15.  Nevertheless, the Court is cognizant that the NDCA presumably possesses absolute subpoena power over an inventor, prior art witnesses, and witnesses relevant to willfulness, while this Court does not.  Accordingly, the Court finds that this factor weighs slightly in favor of transfer.

### 3.  *The Cost of Attendance of Willing Witnesses*

Defendants argue that this factor "strongly favors transfer" because the NDCA is more easily accessible to both SIE's San Mateo and San Francisco offices and Defendants' Tokyo-office. (Dkt. No. 21 at 11.)  Specifically, SIE and SIEI employees working in the San Mateo and San Francisco offices would only commute 12-21 miles to the NDCA courthouse, compared to roughly 6 hours of travel to the EDTX.  (*Id.* at 12.)  Tokyo-based employees would only need to fly about 9 hours and drive for an additional 12 miles to the NDCA courthouse, compared to roughly 14

hours of travel to the EDTX.  (*Id.* at 11-12.)  In addition, Defendants reiterate that the majority of its 18 identified non-party witnesses work in California.  (*Id.* at 12-13.)

Plaintiff responds that the most important witnesses for this case will likely come from China or Japan, and that all those witnesses will find international travel to the NDCA and EDTX about equally inconvenient. (Dkt. No. 40 at 11-12.)  Plaintiff further argues that the SIE employees identified by Defendants have no "unique, non-duplicative, relevant knowledge" because they are only knowledgeable about sales, marketing, and product development testing.  (*Id.* at 12-13.) Plaintiff points out that Defendants have not identified any NDCA witnesses knowledgeable about technical issues regarding infringement and validity.  (*Id.* at 13.)

The Court finds that this factor is neutral.  As an initial matter, the Court notes that Defendants improperly attempt to double count prior art witnesses they have already identified for the previous factor.  Either these witnesses require compulsory process to secure their attendance (assessed under the second private interest factor) or they are willing witnesses (assessed under the third private interest factor), but they cannot be both.  *See In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) ("[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor.") (internal quotation omitted); *see also Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 2161028, at *5 (E.D. Tex. June 14, 2022) ("The non-party witnesses identified by T-Mobile in this factor were also identified by T-Mobile in the previous factor. The Court is perplexed as to why compulsory process would be required for a willing witness. Further, T-Mobile has not submitted any declarations showing that any non-party witness would be willing or unwilling. This Court has repeatedly cautioned litigants not to conflate the two factors and the necessary showing required to demonstrate willingness or unwillingness.").

10

**Appx10**

This Court has already assessed Defendants' prior art witnesses under the second private interest factor, as Defendants argued it should, and the Court will not improperly double count the impact of these witnesses by also analyzing them under the third private interest factor. *See In re Apple Inc.*, 979 F.3d at 1340 (cautioning against "inappropriately count[ing] twice" the convenience of witnesses under multiple factors).

Defendants do not meaningfully dispute Plaintiff's assertion that the witnesses most germane to the technical issues of infringement and validity will travel from China or Japan. Accordingly, the Court accords less weight to the convenience of the SIE witnesses working in the NDCA. In the Court's view, the witnesses traveling from Japan or China will already be traveling a substantial distance such that any difference in travel time between this Court and the NDCA is unlikely to impose a practically significant additional burden. Although it might be true that these individuals will need to travel a greater distance to reach the EDTX than NDCA, and although a flight from Japan or China to the NDCA might take a bit less time than from Japan or China to the EDTX, "in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs." *See In re Apple Inc.*, 979 F.3d at 1342 (Fed. Cir. 2020) (holding that "the 100-mile rule should not be rigidly applied where witnesses will be required to travel a significant distance no matter where they testify") (internal quotations omitted). Accordingly, the Court finds that this factor is neutral in the transfer analysis.

### 4. *All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive*

Defendants argue that this factor is neutral because Plaintiff's additional lawsuit in this District involves "a different defendant, different products, and one less patent than the present case." (Dkt. No. 21 at 13.) In addition, Defendants argue that Plaintiff has no presence in this District other than as a litigant. (*Id.*)

Plaintiff responds that this Court presides over a case against Samsung involving two of the same Asserted Patents. (Dkt. No. 40 at 13.) According to Plaintiff, the two cases will have "substantial overlap with respect to validity, claim construction, and damages." (*Id.*) Plaintiff further observes that completing claim construction in the *Samsung* case will give this Court familiarity with any overlapping *Markman* issues in this case. (*Id.*)

As Plaintiff noted, this Court presides over the *Samsung* case, which involves the same Plaintiff and two of the three Asserted Patents. The *Samsung* case is currently stayed pending final resolution of *the inter partes review* proceedings. If the *inter partes review* proceedings do not dispose of all the issues in the *Samsung* case, this Court's simultaneous adjudication of both cases will benefit judicial economy and avoid inconsistent determinations. This Court is familiar with the Asserted Patents and will no doubt face overlapping issues between the two cases. *See Enovsys LLC*, 2022 WL 2161028, at *6 ("[I]t would be inefficient to transfer a case to a different venue when the Verizon Case involving the same Asserted Patents and asserted claims is currently pending [] before the undersigned.").

Moreover, the Court finds that Defendants' substantial delay in moving to transfer is a fact that weighs against transfer. *Monarch Networking*, 2021 U.S. Dist. LEXIS 1551, at *29. Defendants waited nine months after the complaint was filed to move for transfer. In the meantime, the parties and the Court have expended resources litigating pretrial aspects of this case, including substantive motion practice. Accordingly, the Court finds that this factor weighs against transfer.

### D. Public Interest Factors

#### 1. *The Administrative Difficulties Flowing from Court Congestion*

Defendants argue that this factor is neutral because "the difference in median time between the filing and disposition of a civil case at trial between the EDTX and the NDCA is a mere two months." (Dkt. No. 21 at 14.) In addition, Defendants argue that this factor should not be accorded

any weight because Plaintiff is not engaged in product competition with the Accused Products. (*Id.*)  Defendants further note that court congestion is the "most speculative of the factors." (*Id.* at 13.)

In response, Plaintiff argues that transferring this case to the NDCA would "both turn back the clock and then run it more slowly." (Dkt. No. 40 at 14 (quoting *Monarch Networking*, 2021 U.S. Dist. LEXIS 1551, at *35).)  Plaintiff further notes that recent statistics confirm that this District is more efficient in handling cases, particularly patent cases, than the NDCA. (*Id.*) Specifically, on average, this District is five months faster than the NDCA. (*Id.*)  Plaintiff further argues that the right to a prompt adjudication is not limited to manufacturing entities. (*Id.*)

The Court finds that this factor is neutral in the transfer analysis.  The parties appear to agree that the EDTX has a faster median time-to-trial than the NDCA.  (Dkt. No. 21 at 14; Dkt. No. 40 at 14).  While Defendants contend that this is "a minor difference," the Court differs.  This case has been timely proceeding to trial in this district in the nine months prior to this Motion being filed, counseling against transfer.  *See In re TikTok, Inc.*, 85 F.4th 352, 363 ("This factor normally weighs against transfer when the 'case appears to be timely proceeding to trial before the' transferee district.") (quoting *Planned Parenthood*, 52 F.4th at 631).  Nonetheless, this Court recognizes that the Federal Circuit recently instructed that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).[2]  Here, there is no dispute that Plaintiff is not a competitor in the marketplace.  While this Court finds it odd to consider the marketplace status of the parties in assessing this *public* interest factor related to court congestion, it is bound

---

[2] The Court notes that a faster average time to trial leads to the more efficient and economical resolution of cases, something all litigants can value regardless of market position.

by the Federal Circuit's decision in *In re Google* to afford this factor no weight.  As such, the Court finds that this factor is neutral.

### 2.  *The Local Interest in Having Localized Interests Decided at Home*

Defendants argue that this factor favors transfer because the events forming the basis of the infringement claims "occurred outside the U.S. (manufacturing) and by SIE or SIEI in California (importing, product development testing, and/or selling)."  (Dkt. No. 21 at 15.)  In addition, Defendants argue that "[t]his case undoubtedly calls into question the work of SIE, the company that markets, sells, and distributes the Accused Products in the U.S., and its and SIEI's employees in the [NDCA]."  (*Id.*)  By contrast, Defendants contend that "the EDTX has no local interest in this dispute" because "Plaintiff has no connection to this District [] and there are no sources of proof or witnesses in this District."  (*Id.*)

In response, Plaintiff argues that this factor weighs against transfer because "[n]o design, development, or manufacture takes place in NDCA."  (Dkt. No. 40 at 15.)  Rather, Plaintiff contends that the primary local interest is in Japan and China, where the Accused Products are designed and developed.  (*Id.*)  Plaintiff further notes that the Accused Products are sold nationwide, including in Texas.  (*Id.*)  Finally, Plaintiff argues that third parties MediaTek, Microchip, ARM, and AMD are in Texas and have an interest in whether their products are used in infringing devices.  (*Id.*)

The Court finds that this factor weighs slightly in favor of transfer.  Defendants point to non-party SIE (headquartered in NDCA) and its employees to support their position that the NDCA has a "compelling local interest" in this case.  (*Id.*).  However, SIE is not a named party to this action.  Furthermore, Defendants do not meaningfully challenge Plaintiff's argument that the Accused Products were primarily manufactured and designed in Japan and China, not in the NDCA.  The Accused Products are then distributed nationwide, including to Texas, by non-party

14

**Appx14**

SIE. That is not sufficient to elevate SIE's status to that of a key figure in the transfer analysis. As Plaintiff notes, both named Defendants are Japanese entities, meaning that neither has a particular attachment to either the EDTX or the NDCA. The Court is not persuaded that the presence of non-party SIE in the NDCA transforms this into "the sort of localized case where the citizens of [the NDCA] have a greater 'stake' in the litigation than the citizens of [the EDTX]," especially where "the defendants and the [numerous remaining] witnesses are located across the state[,] across the country," and even across the globe. *Planned Parenthood*, 52 F.4th at 631–32. Nonetheless, Plaintiff fails to identify any particularized local interest in the citizenry of the EDTX deciding this case. Accordingly, due to the presence of non-party SIE and its employees in the NDCA, the Court finds that this factor weighs slightly in favor of transfer.

### 3. *The Familiarity of the Forum with the Law that Will Govern the Case*

The parties agree that this factor is neutral. (Dkt. No. 21 at 15; Dkt. No. 40 at 15.) The Court agrees and accordingly finds this factor to be neutral.

### 4. *The Avoidance of Unnecessary Problems of Conflict of Laws or the Application of Foreign Law*

The parties agree that this factor is neutral. (Dkt. No. 21 at 15; Dkt. No. 40 at 15.) The Court agrees and accordingly finds this factor to be neutral.

## V.   CONCLUSION

In view of the foregoing factors, the Court must determine whether the NDCA is "clearly more convenient" than the EDTX. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology.").

Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient."  *See id.*  Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient."  *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning.  *See id.*  When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence.  *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found that three factors weigh slightly in favor of transfer, four factors weigh neutrally, and the remaining factor weighs against transfer, and having weighed those factors within the context of Defendants' unexcused and material delay in filing the Motion, the Court concludes that the NDCA is not a "clearly more convenient" forum for this dispute.  In conclusion and considering the individualized weight of the specific factors, the Court is of the opinion that Defendants' Motion (Dkt. No. 21) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 10th day of April, 2024.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

16

**Appx16**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RESONANT    SYSTEMS,    INC.,    d/b/a RevelHMI, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO.  2:22-CV-00424-JRG |
| SONY GROUP CORPORATION and SONY INTERACTIVE ENTERTAINMENT INC., | § § § | |
| *Defendants.* | § § | |

**<u>ORDER</u>**

## I.    INTRODUCTION

Before the Court is Defendants Sony Group Corporation ("SGC") and Sony Interactive Entertainment Inc.'s ("SIEI") (collectively, "Defendants") Motion to Reconsider the Court's Order (Dkt. No. 55) Denying Defendants' Motion to Transfer Venue to the Northern District of California (the "Motion").  (Dkt. No. 63.)  Having considered the Motion and the related briefing, the Court finds that the Motion should be and hereby is **DENIED**.

## II.    BACKGROUND

On April 11, 2024, this Court issued an Order denying Defendants' Motion to Transfer Venue to the Northern District of California pursuant to § 1404(a).  (Dkt. No. 55.)  In the Order, the Court conducted an analysis of Defendants' delay in filing their transfer motion under the fourth private interest factor, "all other practical problems that make trial of a case easy, expeditious, and inexpensive."  (*Id.* at 11-12.)

**Appx17**

### III.    DISCUSSION

In its Motion for Reconsideration, Defendants argue that the Court's finding that Defendants waited nine months to file their Motion to Transfer justifies reconsideration of its prior Order.  (Dkt. No. 63 at 3.)  Specifically, Defendants point out that Plaintiff did not accomplish service of the Complaint on Defendants until April 28, 2023, being six months after the lawsuit was filed. (Dkt. No. 63 at 1.)  Accordingly, Defendants contend that they timely filed their transfer motion only three months after being served with the Complaint.  (*Id.* at 2.)

In response, Plaintiff argues that while formal service took additional time, Defendants have never denied that they had full knowledge of this lawsuit long before they were served.  (Dkt. No. 66 at 1.)  Plaintiff further argues that Defendants failed to explain why they needed three months to prepare a transfer motion.  (*Id.* at 2.)  In addition, Plaintiff argues that even ignoring Defendants' delay, the relevant evidence considered under this factor would still weigh against transfer.  (*Id.* at 2-3.)

Having carefully reconsidered the private and public interest factors as applied to the totality of the facts in this case and out of an abundance of caution having discounted the delay factor from its analysis, the Court continues to find that the NDCA is not a "clearly more convenient" forum for this dispute.  As an initial matter, the Court notes that Defendants admit that venue in this District is proper and sought only to transfer this action on convenience grounds under 28 U.S.C. § 1404(a).  (Dkt. No. 21 at 1.)  As the Court explained in its Order (Dkt. No. 55), the finding of delay factored into its analysis of the fourth private interest factor ("all other practical problems that make trial of a case easy, expeditious, and inexpensive").  However, Defendants' delay was not the only component that weighed against transfer within this factor.  As Plaintiff noted, the Court also explained that the simultaneous adjudication of this case and the co-pending

**Appx18**

*Samsung* case, which involves two of the same asserted patents, will benefit judicial economy and avoid inconsistent determinations.  (Dkt. No. 55 at 12.)  As such, even after discounting Defendants' delay from the analysis under this factor, this Court still finds that the factor, on balance, weighs against transfer.

Further, the Court is not persuaded that Defendants did not have pre-service knowledge of the lawsuit.  Interestingly, Defendants never contend that they had no pre-service notice of this case on its filing.  If such were true, they surely would have said so.  The Court understands that the typical practice regarding foreign defendants involves pre-service communications between plaintiff's counsel and defendant's domestic subsidiaries and/or its known legal counsel as to service of process under the Hague Convention.  This is often a laborious, time-consuming process during which plaintiffs seek to negotiate a delayed answer date with entities and/or counsel related to the foreign defendants as an alternative to formal service under the Hague Convention.  These communications impart knowledge of the litigation often many months before formal service can be accomplished and where such negotiations have failed.  The fact that Defendants remained silent in their Motion to Reconsider as to pre-service awareness of the lawsuit supports the Court's reasonable suspicion that the actual delay was much longer than three months.  (Dkt. No. 63; Dkt. No. 68.)  Nonetheless, even without a more significant delay, this particular factor still weighs against transfer, as noted above.

The remainder of the Court's analysis remains unchanged.  Having found that three factors weigh slightly in favor of transfer, four factors weigh neutrally, and the remaining factor weighs materially against transfer, the Court concludes that the NDCA is not a "clearly more convenient"

3

**Appx19**

forum for this dispute.[1]  Accordingly, the Court finds that Defendants' Motion (Dkt. No. 63) should

be and hereby is **DENIED**.

     **So ORDERED and SIGNED this 9th day of July, 2024.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[1] The Fifth Circuit has emphasized that district courts should not merely engage in a "raw counting" exercise that tallies up the factors favoring transfer and the factors militating against transfer.  *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology.").

## CERTIFICATE OF COMPLIANCE

I, Eric A. Buresh, counsel for Petitioners, certify that the foregoing petition complies with the type-volume limitation set forth in Fed. R. App. P. 21(d)(1). Specifically, this petition contains 4,822 words as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 365, in 14-point Times New Roman font.

August 8, 2024

/s/ *Eric A. Buresh*
Eric A. Buresh
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
(913) 777-5600
eric.buresh@eriseip.com

*Counsel for Petitioners Sony Group Corporation and Sony Interactive Entertainment Inc.*

**CERTIFICATE OF SERVICE AND FILING**

I hereby certify that a true and correct copy of the foregoing Petition for a Writ of Mandamus has been electronically filed with the Clerk of Court using the CM/ECF system. I further certify that I caused a true and correct copy to be served via e-mail upon Resonant's district court counsel at their last known email addresses and via UPS Ground:

Christian W. Conkle
Qi Tong
Daniel Benjamin Kolko
Reza Mirzaie
Jason Wietholter
Kristopher Ryan Davis
Paul Anthony Kroeger
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
cconkle@raklaw.com
ptong@raklaw.com
dkolko@raklaw.com
rmirzaie@raklaw.com
jwietholter@raklaw.com
kdavis@raklaw.com
pkroeger@raklaw.com
310-826-7474

Additionally, on this 8th day of August 2024, I caused a copy of the foregoing

to be served via UPS, Overnight to the U.S. District Court Judge:

The Honorable Rodney Gilstrap
United States District Court for the Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Telephone: (903) 935-2295

August 8, 2024

/s/ *Eric A. Buresh*
Eric A. Buresh
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
(913) 777-5600
eric.buresh@eriseip.com

*Counsel for Petitioners Sony Group
Corporation and Sony Interactive
Entertainment Inc.*